ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG 1 2 2015

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CATHERINE ROBERTSON,              §
INDIVIDUALLY AND AS NEXT BEST     §
FRIEND OF DEMARCUS JACKSON,       §
A MINOR                           §
          Plaintiff               §
                                  §     **1:15-CV-2850**
vs.                               §   CIVIL ACTION NO. _____
                                  §
UNITED STATES OF AMERICA and      §
ATLANTA MEDICAL CENTER,INC.       §
                                  §
          Defendants              §

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff CATHERINE ROBERTSON, INDIVIDUALLY AND AS NEXT BEST

FRIEND OF DEMARCUS JACKSON, A MINOR brings this original complaint against

Defendants UNITED STATES OF AMERICA and ATLANTA MEDICAL CENTER, INC.

### I. PARTIES

**1.1**    This is a medical malpractice case.

**1.2**    Plaintiff CATHERINE ROBERTSON resides in Atlanta, Georgia. She is the

natural and biological mother of Demarcus Jackson, a minor.

**1.3**    Defendant UNITED STATES OF AMERICA is liable for the negligent conduct

of its agents or employees, Southside Medical Center, Inc. ("SMC"), Neal Freeman, M.D., and

Christopher D. Marine, M.D. At all times relevant to this action SMC was deemed by the United

States Department of Health and Human Services to be an employee of the Public Health

Service, and therefore an employee of the United States of America for the purposes of the

FSHCAA, 42 U.S.C. § 233(g)-(n). Dr. Marine and Dr. Freeman were employees of SMC and

therefore also employees of the United States of America.

**1.4**    Defendant ATLANTA MEDICAL CENTER, INC. is a Georgia corporation

doing business in this federal district and division. It is vicariously liable for the conduct of its

employees and agents.

## II.    JURISDICTION, SERVICE, AND VENUE

**2.1**    This Federal District Court has jurisdiction because this action against the United

States of America is brought pursuant to and in compliance with 28 U.S.C. § 1346(b), 2671-80,

commonly known as the Federal Tort Claims Act, which vests exclusive subject matter

jurisdiction of the Federal Tort Claims Act in Federal District Court.

**2.2**    The Federal District Court has ancillary and/or pendent jurisdiction over the

claims against the state defendant, Tenet Health System, GB, Inc. d/b/a Atlanta Medical Center.

**2.3**    Defendant UNITED STATES OF AMERICA may be served with process in

accordance with Rule 4(i) of the Federal Rules of Civil Procedure by serving a copy of the

Summons and Complaint on United States Attorney John A. Horn, Acting United States

Attorney for the Northern District of Georgia by certified mail, return receipt requested at this

office:

> U.S. Attorney's Office District of Georgia
> Richard B. Russell Federal Building
> Attn: Civil Process Clerk
> 75 Spring Street, S.W., Suite 600
> Atlanta, GA 30303-3309

**2.4**    Service is also perfected on Defendant UNITED STATES OF AMERICA by

serving a copy of the Summons and Complaint on Loretta Lynch, Attorney General of the United

States, by certified mail, return receipt requested at:

2

The Attorney General's Office
ATTN: Civil Process Clerk
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

**2.5**     Defendant ATLANTA MEDICAL CENTER, INC. may be served with process by service on its registered agent:

CT Corporation System
1201 Peachtree Street NE
Atlanta, Georgia 30361

**2.6**     Venue is proper in this district pursuant to 28 U.S.C §1391(e)(1)(B) because the United States of America is a defendant and a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

### III. LIABILITY OF THE UNITED STATES

**3.1**     This case is commenced and prosecuted against the United States of America in compliance with Title 28 U.S.C. § 2671-80, the Federal Tort Claims Act. Liability of the United States is predicated specifically on 28 U.S.C. §2674 because the personal injuries and resulting damages for which the complaint is made were proximately caused by the negligence, wrongful acts, and/or omissions of employees and/or agents of the United States of America working at Southside Medical Center in Atlanta, Georgia, while acting within the scope of their office, employment, and/or agency under circumstances where the United States of America, if a private person, would be liable to the Plaintiff in the same manner and to the same extent as a private individual.

**3.2**     The substantive law of the State of Georgia applies to this lawsuit.

**3.3**     At all material times all persons involved in the medical and health care services provided to Catherine Robertson and her unborn son, Demarcus Jackson, at Southside Medical

3

Center in Atlanta, Georgia were agents, servants, and/or employees of the United States of America, and were at all material times acting within the course and scope of such employment, including but not limited to Neal P. Freeman, M.D. and Christopher D. Marine, M.D., who were employee physicians of the U.S. Government at all times relevant to this lawsuit.

## IV. JURISDICTIONAL PREREQUISITES

**4.1**     Plaintiff pleads pursuant to 28 U.S.C. §§ 2672 and 2675(a) that the claims set forth meet all jurisdictional prerequisites, including timely administrative presentment. The claims set forth in this complaint were delivered to the Department of Health and Human Services on April 1, 2014. Receipt of the claims was acknowledged by the Department of Health and Human Services on April 7, 2014. The Department of Health and Human Services denied the claim on May 6, 2015. This suit has been filed after the administrative presentation and denial of Plaintiff's Form 95s. Accordingly, pursuant to 28 U.S.C § 2675(a), Plaintiff has complied with all jurisdictional prerequisites and conditions prior to the commencement and prosecution of this suit.

## V. FACTS

**5.1**     This is a Federal Tort Claims Action for monetary damages sustained by Plaintiff and her minor son, Demarcus Jackson, arising out of the personal injuries sustained by Demarcus Jackson as a result of substandard – and therefore negligent – medical care.

**5.2**     Shortly after midnight on February 21, 2011, fifteen year old Catherine Robertson presented to the labor and delivery department at Atlanta Medical Center. She was at 39 and 6/7 weeks gestation with an estimated date of delivery of February 22, 2011. She was 5'4" and 185 pounds at the time of admission. The records also show that her pre-pregnancy weight was 136

4

pounds. An electronic fetal monitor was applied to monitor the maternal contractions and the fetal heart rate.

**5.3** The nursing notes indicate that Ms. Robertson stated she had rupture of her membranes at 11:30 pm on February 20, 2011, approximately one-half hour before admission to the L&D unit. However, the L&D flow sheet states that there was artificial rupture of her membranes at 12:33 am on February 21, 2011, with light meconium.

**5.4** Ms. Robertson was examined by Christopher Marine, MD, shortly after her admission. He estimated the fetal weight at 8.5 pounds. According to the chart, Dr. Marine performed artificial rupture of membranes. He also performed a sterile vaginal exam (SVE), noting the cervix to be 5 cm dilated, effacement TBD, and -1 station.

**5.5** At 12:47 am Dr. Marine ordered an amino infusion.

**5.6** A nurse (S. Bolton) charted that she performed a SVE at 2:15 am, noting 6 cm dilation, 80% effacement and -1 station. There had been minimal change in cervical dilation and no fetal descent since admission.

**5.7** Nurse Bolton charted that she performed another SVE at 4:30 am, noting 7 cm dilation, 80% effacement and -1 station. There had been minimal change in cervical dilation and no fetal descent since admission and the last SVE.

**5.8** At 5:14 am, Dr. Marine was notified by Nurse Bolton that "pt [patient] has been having some tectonic ctxs [contractions] with occasional late decels [decelerations]. Asked him to come reviewed [sic] strip, he is going to a delivery [sic]."

**5.9** Dr. Marine came to the bedside in response to this notification. A chart note by Nurse Bolton at 5:45 am states: "Dr. Marine has reviewed strip, notified him pt had a late decel

5

down to the 80s over 4 min. with a good return to baseline." Dr. Marine ordered a bolus of saline and to continue the plan of care.

    **5.10**    Sometime after 5:45 am, Dr. Neale Freeman assumed the care of Ms. Robertson. The chart indicates that he performed a SVE at 8:45 am, noting 8 cm dilation, 90% effacement, and -1 station. There had been minimal change in cervical dilation and no fetal descent since admission and the last SVE. He wrote an order for an intrauterine pressure catheter and Pitocin augmentation. The Pitocin (4 mu) was administered at 9:00 am and discontinued immediately at 9:05 am. The reason for the discontinuance was not charted.

    **5.11**    There are no chart entries concerning the cervical dilation or the fetal station after 8:45 am.

    **5.12**    The fetal monitor strip shows that at 12:01 pm, Ms. Robertson was pushing and that the fetal heart rate responded with a prolonged deceleration starting at 12:02 pm that lasted through 12:12 pm.

    **5:13**    Ms. Robertson continued to push and there was a prolonged deceleration in the fetal heart rate from 12:16 pm through 12:18 pm.

    **5.14**    There continued to be prolonged fetal heart rate decelerations with each contraction.

    **5.15**    At 12:44 pm Ms. Robertson continued to push and the fetus responded with a fetal heart rate deceleration to 60. The fetal heart rate remained less than 100 for approximately 15 minutes according to the fetal heart rate tracing.

    **5.16**    Dr. Freeman was at the bedside at 2:01 pm.

    **5.17**    At 2:06 pm, Ms. Robertson was pushing and the nursing staff noted fetal heart rate decelerations shown on the fetal heart tracing.

6

**5.18**    According to the chart, at some time prior to 2:30 pm, Dr. Freeman attempted to deliver the baby using vacuum extraction. The chart notes 3 attempts at vacuum extraction. The stated indication was "NRFHT" [non reassuring fetal heart tones.] The chart does not include any other details concerning the vacuum extraction, *e.g.,* times of applications, pressures, popoffs, station/position of fetus, etc.

**5.19**    The baby was born by vaginal delivery at 2:30 pm. The chart indicates that the delivery was complicated by shoulder dystocia with "knee chest, supra-pubic pressure, and manual freeing of anterior and posterior shoulders." The chart does not state any other details concerning how the shoulders were freed so the body could be delivered.

**5.20**    The baby was noted at the time of birth to have a fractured clavicle and a left brachial plexus injury. The brachial plexus injury has resulted in permanent impairment.

## VI. CAUSES OF ACTION

### A. United States of America

**6.1**    Defendant UNITED STATES OF AMERICA, acting through its agents or employees including Southside Medical Center, Inc., Dr. Neale Freeman, and Dr. Christopher Marine, was negligent in one or more of the following respects:

        a.      Failing to timely and properly treat Catherine Robertson;

        b.      Failing to timely and properly care for Catherine Robertson;

        c.      Failing to timely and properly diagnose Catherine Robertson;

        d.      Failing to timely and properly evaluate Catherine Robertson;

        e.      Failing to timely and properly monitor Catherine Robertson;

        f.      Failing to recognize the high risk of shoulder dystocia for Catherine Robertson;

7

g.    Attempting a vacuum extraction delivery;

h.    Failing to use proper and recognized maneuvers to free the shoulders and deliver the baby after shoulder dystocia had occurred; and

i.    Failing to timely order and perform a cesarean section delivery.

**6.2**    The negligence of the employees, agents, or representatives of the United States of America proximately caused the injuries sustained by Demarcus Jackson.

### B. Atlanta Medical Center, Inc.

**6.3**    Defendant ATLANTA MEDICAL CENTER, INC., acting through its agents or employees including Nurse S. Bolton, was negligent in one or more of the following respects:

a.    Failing to timely and properly treat Catherine Robertson;

b.    Failing to timely and properly care for Catherine Robertson;

c.    Failing to timely and properly diagnose Catherine Robertson;

d.    Failing to timely and properly evaluate Catherine Robertson;

e.    Failing to timely and properly monitor Catherine Robertson;

f.    Failing to recognize the high risk of shoulder dystocia for Catherine Robertson;

g.    Failing to utilize the nursing chain of command when the vacuum extraction was ordered;

h.    Failing to document and report the progression of labor, particularly during the second stage of labor.

**6.4**    The negligence of employees, agents, or representatives of Atlanta Medical Center, Inc. proximately caused the injuries sustained by Demarcus Jackson.

8

## VII. DAMAGES

**7.1**     As a proximate result of Defendants' negligent acts or omissions, Damarcus Jackson suffered a severe, permanent and disabling injury to his left brachial plexus. Plaintiff pleads for all past and future damages available under Georgia state law, federal law, and equity including, but not limited to:

1.     Physical pain and suffering of Demarcus Jackson;

2.     Mental pain and suffering of Demarcus Jackson;

3.     Physical impairment of Demarcus Jackson;

4.     Disfigurement of Demarcus Jackson;

5.     Medical and related expenses for the treatment of Demarcus Jackson;

6.     Loss of earning capacity of Demarcus Jackson; and

7.     Other damages, whether general or special, direct or consequential.

## VIII. COMPLIANCE WITH GA. CODE ANN. §9-11-9.1

In the unlikely event it is determined that O.C.G.A. §9-11-9.1 applies, Plaintiff attaches as "Exhibit A and B" affidavits from experts competent to testify which set forth specifically at least one negligent act or omission committed by Defendants along with the factual bases for such opinions.

## IX. CONCLUSION

Plaintiff requests that Defendants be cited to appear and answer herein and that upon final trial and hearing, Plaintiff have judgment against Defendants for the full amount of the compensatory damages; for such other and different amounts as shall be shown by proper amendment before trial; for all allowable pre-judgment and post-judgment interest at the

applicable legal rate; for all Court costs incurred in this litigation; and for such other and further

relief, at law and in equity, both general and special, to which Plaintiff may be entitled.

Respectfully submitted,

By:

EDWARD D. FLYNN, III
Georgia State Bar No. 266536
nedf@lawfg.com
FLYNN & GOTTLIED, P.A.
800 Johnson Ferry Road, N.E.
Atlanta, Georgia 30342
Tel. 404-497-8015
Fac. 404-497-8019

– and –

RONALD I. KAPLAN
Georgia State Bar No. 407307
rik@kaplanlegal.com
Kaplan & Lukowski LLP
333 Sandy Springs Circle, Ste. 200
Atlanta, Georgia 30328
Tel. 404-845-0012
FAC. 404-

-and-

EUGENE W. BREES, *pro hac pending*
Texas State Bar No. 02947500
cbrees@NationalTrialLaw.com
LAURIE HIGGINBOTHAM, *pro hac pending*
Texas State Bar No. 50511759
lhigginbotham@nationaltriallaw.com
WHITEHURST, HARKNESS, BREES, CHENG,
ALSAFFAR & HIGGINBOTHAM, PLLC
7500 Rialto Blvd., Bldg. Two, Ste. 250
Austin, Texas 78735
Tel. 512-476-4346
Fac. 512-476-4400

ATTORNEYS FOR PLAINTIFF

10

## AFFIDAVIT OF FRED DUBOE

STATE OF ILLINOIS,
COUNTY OF COOK

Fred Duboe, being duly sworn, deposes and state:

1.     I am a medical doctor licensed to practice medicine in the State of Illinois by the Illinois Department of Financial and Professional Regulation. I have been board certified in Obstetrics and Gynecology by the American Board of Obstetrics and Gynecology since 1987 and was recertified in 1997, 2007 and annually thereafter. I have been actively and continuously engaged in the practice of Obstetrics and Gynecology since 1985. I am familiar with the treatment and management of women who are pregnant and in labor and I deliver approximately 120 babies a year.

2.     Through education, training and experience, I am familiar with the standard of care applicable to the medical profession generally and am familiar with the standard of care regarding the practice of Obstetrics and Gynecology.

3.     I have reviewed the following certified medical records for Demarcus Jackson and Catherine Robinson:

   a. Atlanta Medical Center;

   b. Atlanta Peri-natal Associates;

   c. Southside Medical Center;

   d. Neale P. Freeman, MD; and

   e. Atlanta Medical Clinic;

4.     Based on my review and on my knowledge and experience in dealing with similar medical problems, it is my opinion that the physicians and healthcare professionals who monitored Catherine Robertson's labor and delivery failed to exercise that degree of skill and care ordinarily required by the medical profession in general, under like conditions, and similar circumstances. I have identified the following specific acts and omissions in support of this opinion.

5.     On February 21, 2011, fifteen year old Catherine Robinson was at 39 and 6/7 weeks gestation with an estimated date of delivery of February 22, 2011 when she presented to the labor and delivery department at Atlanta Medical Center. At the time of admission she was 5-6 cm dilated, and a -1 station. Her heart rate was 102 and her blood pressure was 90/70. She was 5'4" and 185 pounds at the time of admission. The records also show that her pre-pregnancy weight was 136 pounds.

6.     The nursing notes indicate that Ms. Robertson stated she had ruptured her membranes at 11:30 pm, approximately one-half hour before her admission to the L & D unit.     However, the L&D flow sheet on admission indicates that there was rupture of her membranes at 12:33 am with light meconium.

7.     At 12:45 am Christopher Marine, MD took a history and performed a physical examination.     He estimated the fetal weight at 8.5 pounds and an estimated head circumference of 37 cm. The fetus had a scalp electrode placed by the nursing staff at 12:02 am. Dr. Marine performed active rupture of membranes

and noted the fetus at 5 cm dilated, effacement TBD, -2 station and a fetal heart rate of 150 that initially was recorded by the nursing staff at 12 midnight at 155.

8.      At 12:47 am Dr. Marine ordered an amnio infusion.

9.      The L & D flow sheet shows the fetus at 6 cm dilated, 80% effacement and -1 station at 2:00 am.

10.     The notes made at 2:50 am identify Dr. Overstreet as the attending physician. The L & D notes also identify Dr. Marine as the attending and admitting obstetrician.

11.     The L&D flow sheet shows the fetus 7 cm dilated, 80% effaced and -1 station as of 4:00 am.

12.     At 5:14 am, Dr. Marine was notified by S. Bolton, RN that "pt has been having some tectonic contractions with occasional late decelerations. Asked him to come reviewed [sic] strip, he is going to a delivery [sic]".

13.     At 5:45 am Dr. Marine reviewed the fetal heart tracing. Dr. Marine ordered a bolus of saline and orders to continue the plan of care.

14.     At both 8:00 am and 8:40 am, Ms. Robertson was 8 cm dilated, 90% effaced, and -1 station.

15.     At 8:45 am, Dr. Neale Freeman wrote an order for Pitocin augmentation. The Pitocin was administered at 9:00 am and discontinued at 9:10 am.

16.     The FHT shows that at 12:01 pm, Ms. Robertson was pushing and that the fetal heart rate responded with deceleration.

17. Ms. Robertson continued to push and there was a prolonged deceleration in the FHR from 12:01 pm until 12:26 pm.

18. Ms Robertson stopped pushing at 12:26 pm and the FHR returned to baseline.

19. At 12:50 pm Ms. Robertson began to push again and the fetus responded with a FHR of 60 and remained less than 100 for approximately 10 minutes according the fetal heart tracing.

20. No further vital signs are recorded after 1 pm.

21. Neale P. Freeman, MD was at the bedside at 2:01 p.m.

22. At 2:06 pm, Ms. Robertson was pushing and the nursing staff noted fetal heart rate decelerations shown on the fetal heart tracing.

23. At 2:19 pm, the scalp electrode was observed to no longer be in place by the nursing staff.

24. At 2:30 pm, a delivering health care professional, the identity of whom is not noted in the L & D records, charted knee chest, supra-pubic pressure, and manual freeing of anterior and posterior shoulders.

25. At 2:30 pm, the fetus was delivered by vacuum extraction with Apgar's of 2 and 8, weight 8 lbs 11 ounces. The L & D record identifies Charles Matuza, PA as the practitioner at delivery. Dr. Freeman is also listed on the delivery record.

26. At 3:26 pm a delivery note was completed which referenced knee chest, supra-pubic pressure, manual freeing of anterior and posterior shoulders.

.

27. At 4:20 pm, Labor and Delivery summary for vacuum extraction for NRFHT ("Non reassuring fetal heart tracing").

28. Demarcus Jackson was noted at the time of birth to have a left shoulder dystocia and a left brachial plexus injury.

29. It is not clear from the medical record which medical providers were responsible for Demarcus Jackson's birth. The medical records identify Dr. Freeman, Dr. Marine, Dr. Alphonso Overstreet, Dr. Latham Wyatt Overstreet and/or Charles Matuza, PA as having some amount of involvement.

30. The delivering physicians and/or healthcare professionals breached the standard of care when they failed to properly document the progression of labor between 8:45 am and 2:30 pm. There is no record of the length of the second stage of labor.

31. The delivery physicians and/or the healthcare professionals failed to document the events regarding the application and use of the vacuum extraction in delivery of the fetus.

32. I understand that I am only required to provide one act of negligence and I reserve the right to supplement my opinion after further information is provided.

33. Annexed as Exhibit A is my Curriculum Vitae outlining my training and qualifications.

34. I make this Affidavit under oath, after having been duly sworn, on the basis of my training and medical experience. I am of legal age and fully competent

to testify to all of the opinions and conclusions stated herein. This Affidavit is executed for the purpose of being attached to and used in support of the plaintiff's Complaint for Damages for Medical Malpractice as required by O.C.G.A. §9-11-9.1.

_____
Dr. Fred Duboe

Sworn to and subscribed before me

this 20ᵗʰ day of February, 2015.

_____
Notary Public

OFFICIAL SEAL
CATHLEEN A SACOMANO
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/05/17

My commission expires: 6/5/17

ROGER L. DOUGLAS M.D., P. A. D.

Northwest Associates for Women's Healthcare, S.C.
1786 Moon Lake Blvd. Suite #207
Hoffman Estates, Illinois 60189
Office Phone 847-884-1800
Voice Mail/Cellular Phone 847-337-7755
E Mail: RCKNDOC@aol.com

## CURRICULUM VITAE

### *UNDERGRADUATE EDUCATION*

University of Michigan, Ann Arbor, Michigan 1972-1973
Brown University, Providence, R.I. 1973-1976
  Bachelor of Arts Degree with Honors, Biomedical Sciences, 1976
  Sigma Xi Honorary Society

### *MEDICAL EDUCATION*

University of Illinois /Abraham Lincoln School of Medicine, Chicago, IL. 1976-1980
Doctor of Medicine degree, 1980

### *GRADUATE MEDICAL EDUCATION*

Northwestern University Medical School/Northwestern Memorial Hospital, Chicago,
IL, 1980-1981
  Internship in Obstetrics/Gynecology with additional rotations in Emergency
  Medicine, Internal Medicine, Intensive Care, Orthopedic Surgery and Endocrinology

Northwestern University Medical School/Northwestern Memorial Hospital & Prentice
Womens' Hospital and Maternity Center, 1980-1984
  Residency in Obstetrics and Gynecology
  Senior Resident, 1983-1984, responsible for management of housestaff of 28
  residents, helping to coordinate all administrative and planning functions

### *PRIOR STAFF POSITIONS*

Humana Hospital, Hoffman Estates, IL.
  Resident /Housestaff Physician in Obstetrics/Gynecology, 1983-1984

Near North Clinic, Chicago, IL. : Staff physician in Family Planning & Contraception

PAGE 2 CURRICULUM VITAE, FRED J. DUBOE, M.D., F.A.C.O.G.

Northwest Physicians for Women, S.C., Hoffman Estates, Illinois
Private practice and Attending Physician, Obstetrics and Gynecology, 1984-1995

Healthsouth/Poplar Creek Surgicenter; Hoffman Estates, IL.
Attending Physician

## CURRENT STAFF POSITIONS

Northwest Associates for Womens' Healthcare, S.C. , Hoffman Estates, Illinois
Partner and Vice-President, Obstetrics and Gynecology, Attending Physician

Vice-Chairman, Department of Obstetrics and Gynecology, 1986-1992, 1994-1998
St. Alexius Medical Center, Hoffman Estates, Illinois

Chairman, Perinatal Advisory Committee, 1984-present

Member, Quality Assurance Committee, St. Alexius Medical Center, Hoffman
Estates, IL.

Member, Obstetrics and Gynecology Steering Committee, St. Alexius Medical Center,
Hoffman Estates, IL.

Attending Physician, St. Alexius Medical Center, Hoffman Estates, IL. 1985-present

Attending Physician; Advocate Lutheran General Hospital, Park Ridge, IL. 2006-
present

Attending Physician; Northwest Surgicare Surgicenter; Arlington Heights, IL. 2001-
present

Member, Institute for Healthcare Improvement (IHI); St. Alexius Medical Center

Member, Perinatal Safety Committee; St. Alexius Medical Center

Clinical Instructor in Obstetrics/Gynecology; Resurrection Hospital OB/GYN
Residency Program; Chicago, IL.

PAGE 3 CURRICULUM VITAE, FRED J. DUBOE, M.D., F.A.C.O.G.

*PROFESSIONAL SOCIETIES*

Diplomate, American Board of Obstetrics and Gynecology, 1987-present
Society of Laparoscopic Surgeons, 1987-2001
American Association of Gynecologic Laparoscopists 2001-present
American Society of Reproductive Medicine 1988-present
American Medical Association, Member
Illinois State Medical Society, Member
Chicago Medical Society, Member
American Fertility Society, Member

*PUBLICATIONS*

"Fibrin Generation in Normal Pregnancy," Obstetrics and Gynecology, 64:46, 1984

"Diagnosis of Septic Pelvic Vein Thrombophlebitis by Measurement of Fibrinopeptide A", American Journal of Perinatology, Vol. 2, No. 2, April, 1985

"Increased Fibrin Generation During the Diabetic Pregnancy," Journal of Perinatal Medicine, 12:161, 1984

"Distinguishing Preeclampsia from Chronic Hypertension Using Antithrombin III", Proceedings: Society for Gynecological Investigation, Washington, D.C., 1983

Presentation of posters at Society for Gynecological Investigation symposium, Washington, D.C., 1984

*BOARD CERTIFICATION*

Diplomate, American Board of Obstetrics and Gynecology, 1987

Recertification, American Board of Obstetrics and Gynecology examination, Dallas, TX, 1997; Recertification 2007; 2008, 2009, 2010, 2011, 2012, with continuing recertification annually                    *and* 2013

PAGE 4 CURRICULUM VITAE FRED J. DUBOE, M.D. , F.A.C.O.G.

## *HONORS*

Inclusion in Castle-Connolly Guide, How to Find the Best Doctors /Chicago Metropolitan Area: First Edition 1999; p. 204, Obstetricians/Gynecologists; 2003, Second Edition

Listed as one of the "Best Doctors in Chicago" cover story in January, 2001 issue of CHICAGO MAGAZINE

June 15, 2001—Appeared in Chicago Sun-Times feature story and Daily Herald feature story regarding "Doctors and Defibrillator Save Life of Sean Morley"
PAGE 4 CURRICULUM VITAE FRED J. DUBOE, M.D., F.A.C.OG.

June 15, 2001—Television WBBM, WMAQ, WGN, FOX news , ABC news—Cover story of "Doctors Save Life of Sean Morley"

July 2, 2001—Television WMAQ (NBC), WGN and FOX news—Lead news story televising Dr. Duboe's Commendation received from the Village of Buffalo Grove for saving life of Sean Morley on 6/13/01

February 2, 2002-American Heart Association awarded "American Heartsaver Award"

Invited speaker: Grand Rounds, "Hormone Replacement Therapy," Wyeth Pharmaceuticals, St. Alexius Medical Center, June, 2003

Guest lecturer, "Lowest Dose Hormone Replacement therapy", multiple venues in the Chicago Metropolitan Area, 2003-2004

"Best Doctors" Award: 2003, 2004; Castle-Connolly Publications

"Patient's Choice Awards", 2009, 2010, 2011, 2012

## *AFFILIATIONS*

Fellow, American College of Obstetricians and Gynecologists, 1988-present
Chicago Medical Society
Illinois State Medical Society

PAGE 5 CURRICULUM VITAE; FRED J. DUBOE, M.D., F.A.C.O.G.

## AFFILIATIONS (Continued)

American Medical Association
American Association of Gynecological Laparoscopists
Brown University Alumni Association/N.A.S.P. Alumni Interviewer
Friends of Harvard Lacrosse
Friends of  Brown Lacrosse
Northwestern University Alumni Association
Northwestern University Obstetrical and Gynecological Society (NUOGS)
University of Illinois Medical Alumni Association
Credentialing Committee of OMNIA, Inc.; Institute for Healthcare Improvement

## *COMMUNITY/PUBLIC SERVICE*

Board of Directors, Center for Enriched Living, 1996-presently Board Emeritus
(C.E.L. presents multiple programs for the developmentally disabled and is the only
recreational center in the Midwest specifically dedicated to this purpose)

C.E.L. "Angel"-1996-present; helping to fund annual auction for C.E.L., primary
source of fundraising for the Center for Enriched Living

Founder, "Rockin' Docs" charity and benefit band, 1986-present
(musician/guitarist)

Fundraiser and Co-Chair; Step Out Foundation; Chicago, December, 2010, 2011

Fundraiser for Stem Cell Research, Spertus Institute of Chicago, Gala May 15, 2011,
Hadassah Hospital May 6, 2012

## *PERSONAL*

Date of Birth:  September 2, 1954, Chicago, IL.
Married      :  December 27, 1981; Sue-Ellen Duboe, R.N., B.S.N.
Children     :  Michael, Jason, Eric

## *CURRENT  AND PREVIOUSLY  HELD LICENSURES :*

*ILLINOIS LICENSE#: 036-063641*
*MICHIGAN LICENSE# 4301079859 (PREVIOUSLY HELD, CURRENTLY INACTIVE)*

PAGE 6 CURRICULUM VITAE; FRED J. DUBOE, M.D, F.A.C.O.G.

*ADDITIONAL AWARDS*

Perinatal Resources Award, Society of Perinatal Obstetricians, San Antonio, Texas, 1983

FURTHER INFORMATION AVAILABLE UPON REQUEST

AFFIDAVIT OF TAMMEY DICKERSON

STATE OF CONNECTICUT,
COUNTY OF New Haven

Tammey Dickerson, being duly sworn, deposes and states:

1.      I am a registered nurse licensed to practice nursing in the State of Connecticut by the State of Connecticut Board of Nursing.  I have been in the continuous practice of nursing since 1984.  I have worked as a labor and delivery nurse continuously since 1986 and I am knowledgeable in the care, treatment and management of women in labor.

2.      Through education, training and experience, I am familiar with the standard of care applicable to the nursing profession generally and am I familiar with the standard of care regarding the nursing practices for labor and delivery patients

3.      I have reviewed the following certified medical records for Demarcus Jackson and Catherine Robertson:

   a.    Atlanta Medical Center;

   b.    Atlanta Peri-Natal Associates;

   c.    Southside Medical Center;

   d.    Neale P. Freeman, MD; and

   e.    Atlanta Medical Clinic;

4.      Based on my review and on my knowledge and experience in dealing with similar medical problems, it is my opinion that the nursing staff at Atlanta

1

Medical Center failed to exercise that degree of skill and care ordinarily required by the nursing profession in general, under like conditions, and similar circumstances.

5.     On February 21, 2011 fifteen year old Catherine Robertson was at 39 and 6/7 weeks gestation with an estimated date of delivery of February 22, 2011 when she presented to the labor and delivery department at Atlanta Medical Center. At the time of admission her cervix was 5·6 cm dilated, and a ·1 station. Her heart rate was 102 and her blood pressure was 90/70. She was 5'4" and 185 pounds at the time of admission. The records also show that her pre·pregnancy weight was 136 pounds.

6.     The nursing notes indicate that Ms. Robertson stated she had ruptured of her membranes at 11:30 pm, approximately one·half hour before her admission to the L&D unit. The L&D flow sheet states that there was artificial rupture of her membranes at 12:33 am with light meconium.

7.     At 12:45 am Christopher Marine, MD took a history and performed a physical examination. He estimated the fetal weight at 8.5 pounds. The fetus had a scalp electrode placed by the nursing staff at 12.02 am. Dr. Marine performed artificial rupture of membranes and noted Ms. Robertson's cervix to be 5 cm dilated, effacement TBD, ·2 station and a fetal heart rate of 150 that initially was recorded by the nursing staff at 12 midnight at 155.

8.     At 12:47 am Dr. Marine ordered an amino infusion.

9.     The nursing note on the L&D flow sheet shows Ms. Robertson's cervix to be 6 cm dilated, 80% effacement and ·1 station at 2:00 am.

2

10.     The notes made at 2:50 am identify Dr. Overstreet as the attending physician. The L&D. notes also identify Dr. Marine as the attending and admitting obstetrician.

11.     The nursing note on the L&D flow sheet records Ms. Robertson's cervix to be 7 cm dilated, 80% effaced and -1 station as of 4:00 am.

12.     At 5:14 am, Dr. Marine was notified by S. Bolton, RN that "pt has been having some tectonic ctxs with occasional late decels. Asked him to come reviewed [sic] strip, he is going to a delivery [sic]".

13.     At 5:45 am Dr. Marine reviewed the fetal heart tracing. Dr. Marine ordered a bolus of saline and orders to continue the plan of care.

14.     At both 8:00 am and 8:40 am, Ms. Robertson was 8 cm dilated, 90% effaced, and -1 station.

15.     At 8:45 am, Dr. Neale Freeman wrote an order for Pitocin augmentation. The Pitocin was administered at 9:00 am and discontinued at 9:10 am.

16.     The FHT shows that at 12:01 pm, Ms. Robertson was pushing and that the fetal heart rate responded with a prolonged deceleration starting at 12:02 pm that lasted through 12:12 pm.

17.     Ms. Robertson continued to push and there was a prolonged deceleration in the FHR from 12:16 pm through 12:18 pm.

18.     There continues to be prolonged decelerations with each contraction.

3

19. At 12:44 pm Ms, Robertson continues to push and the fetus responded with a FHR drop to 60 and remained less than 100 for approximately 15 minutes according the fetal heart tracing.

20. The nursing staff failed to assess, communicate and acknowledge Ms. Robertson's vital signs after 1 pm.

21. Neale P. Freeman, MD was at the bedside at 2:01 p.m.

22. At 2:06 pm, Ms. Robertson was pushing and the nursing staff noted fetal heart rate decelerations shown on the fetal heart tracing.

23. At 2:30 pm, a delivering health care professional, the identity of whom is not noted in the L & D records, charted knee chest, supra-pubic pressure, and manual freeing of anterior and posterior shoulders.

24. At 2:30 pm, the fetus was delivered by vacuum extraction with apgar's of 2 and 8, weight 8 lbs 11 ounces. The L&D record identifies Charles Matuza, PA as the practitioner at delivery. Dr. Freeman is also listed on the delivery record.

25. At 3:26 pm a delivery note was completed which referenced knee chest, supra-pubic pressure, manual freeing of anterior and posterior shoulders.

26. The nursing staff recorded a "spontaneous vaginal delivery". There is no record of when the baby's head was delivered. Nor is there any documentation of the procedures done to facilitate the delivery of the baby or that "vacuum extraction" was utilized.

27. Another note prepared at 4:20 pm noted vacuum extraction for non reassuring fetal heart tracing.

4

28.    Demarcus Jackson was noted at the time of birth to have a left shoulder dystocia and a left brachial plexus injury.

29.    Catherine Robertson presented a high risk for having a baby with shoulder dystocia based on the following factors:

    a.  age of 15;

    b.  excessive weight gain from 136 to 185 pounds;

    c.  the use of an epidural; and

    d.  prolonged labor.

30.    Because of this high risk factors identified above, the nursing staff of Atlanta Medical Center breached the standard of care when

    a. they failed to utilize the chain of command when the vacuum extraction was ordered by Dr. Freeman;

    b. they failed to document the progression of labor, specifically the second stage of labor in order to protect the infant from suffering shoulder dystocia.

31.    Annexed as Exhibit "A" is my Curriculum Vitae outlining my training and qualifications.

32.    I make this Affidavit under oath, after having been duly sworn, on the basis of my training and medical experience. I am of legal age and fully competent to testify to all of the opinions and conclusions stated herein. This Affidavit is executed for the purpose of being attached to and used in support of the plaintiff's Complaint for Damages for Medical Malpractice as required by O.C.G.A. §9-11-9.1.

5

Tammey Dickerson

Sworn to and subscribed before me

this  *10*  day of December, 2012.

Notary Public

CRAIG A. PAIGE
Notary Public, State of Connecticut
Commission Expires Nov. 30, 2014

My commission expires:

6

# Tammey J. Dickerson RNC-OB, BSN, FMC, C-EFM
Southbury, CT
203-264-7257

## EDUCATION
**St. Francis Hospital School of Nursing, Diploma Graduate, Hartford, CT**                          **1984**

**Chamberlain College of Nursing. RN to BSN, St. Louis, MO.**                          **2009**
Bachelors of Science in Nursing Conferred March 1, 2009. GPA 4.0-President's Honors

**Sacred Heart University, Fairfield, CT**
Currently enrolled Masters of Science in Nursing with concentrations in:
- Clinical Nurse Leadership
- Nursing Education

## CLINICAL EXPERIENCE
**Danbury Hospital,** 24 Hospital Ave, Danbury, CT 06488                          **1986-present**
*371-bed Regional Medical Center, Community Teaching Hospital*
*2,300 deliveries per year plus out patient testing and antepartum care.*
Staff/Charge Nurse and Preceptor
- Care of women in the perinatal period including antepartum, intrapartum and the postpartum phases of pregnancy.
- Care of the Newborn
- Precept new staff, experienced new hires, nursing students, and medical students.

**New Milford Hospital,** 21 Elm St, New Milford, CT  06476                          **1984-1986**
*100- Bed Community Hospital*
Staff / Charge Nurse
- 2 years medical surgical experience on medical surgical floor, ICU, ICU step-down/oncology, and recovery room.

## CERTIFICATIONS
- **Inpatient Obstetric Nursing Certification**                          **Current**
  The National Certification Corporation, Chicago, IL
- **Certificate of Added Qualification – External Fetal Monitoring**                          **Current**
  The National Certification Corporation, Chicago, IL
- **Advanced Fetal Monitoring Certification**                          **Current**
  Professional Education Center, Chico, CA
- **Connecticut Nursing License  E46884**                          **1984 – Current**
  Nursing Board State of Connecticut Department of Health

## CONTINUING EDUCATION
- 1986 Corometrics Basic Monitor Course
- 1988 Corometrics Advanced Monitor Course
- 1997 Professional Education Center Advanced Fetal Monitoring Certification
- 2000 Advanced Fetal Monitoring Update, New Hampshire AWHONN16 hrs (Michelle Murray, PhD, RNC)
- 2005 Professional Education Center Advanced Fetal Monitor Recertification 16hrs (Michelle Murray, PhD, RNC)

- 2007 Professional Education Center Advanced Fetal Monitor Recertification 16hrs (Lisa Miller RN, CNM, JD)
- 2007 AWHONN Intermediate Fetal Monitoring Certification 16hrs
- 2008 High Risk Obstetrics Seminar 8 hrs (Cecelia Proctor, RNC)
- 2008 In House Obstetrics Review 16 hrs (Nancy Powell RNC, MSN)
- 2009 Challenges in Obstetrics Seminar 8hrs (Jamie Otremba, RN, CNM, MSN)
- 2009 Connecticut Perinatal Association Spring and Fall Conferences
- 2009 Electronic Fetal Monitoring Advanced Concepts 13 hrs (Lisa Miller, CNM, JD)
- 2009 Advanced Fetal Monitoring Clinical Challenges-Evidence Based Practice 15.5 hrs (Lisa Miller, CNM, JD) for PEC Advance Fetal Monitoring Certification
- 2010 Connecticut Perinatal Association Spring Conference
- 2010 AWHONN National Conference Sept. 25-29, 2010
- 2010 Connecticut Perinatal Association Fall Conference
- 2010 Creative Teaching Strategies for the Nurse Educator 7.5 hrs (Theresa Puckett, PhDc, RN, CPNP, CNE)
- 2011 Complicated Pregnancies; Implications and Management 7.5 hrs (Jamie Otremba, RN, CNM, MSN)
- Yearly Family Birth Center Education Competency
- Basic Life Support                                                                                            Current
  American Heart Association; updated yearly
- Neonatal Resuscitation  Program NRP Provider                                              Current
  American Heart Association / American Academy of Pediatrics; updated every 2 years
- Healthstream Online Continuing Education

## PROFESSIONAL MEMBERSHIPS
- ANA– American Nurses Association
- CtNA- Connecticut Nurses Association
- AWHONN – Association of Women's Health, Obstetrical and Neonatal Nurses
- CPA – Connecticut Perinatal Association
- NACLNC – National Association of Certified Legal Nurse Consultants
- AALNC – American Association of Legal Nurse Consultants
- CT Chapter AALNC – Connecticut Chapter
- NNSDO-National Nursing Staff Development Organization
- Unit 47 Danbury Hospital Nurses Union

## PROFESSIONAL ACTIVITIES
- Shared Governance Committee-current participant
- Clinical Ladder Committee-current participant
- Charge Nurse Competency Committee –current participant
- Nurse-Physician Forum – current participant
- Documentation In-service for the nursing staff of Family Birth Center, Danbury Hospital      2007
- Input into Fetal Monitor and Non Stress Test Policy Revision                                         2007
- Worked with Clinical Leader to review and revise Nursing Policies for Labor and Delivery  2007
- Assisted in the review and update of the Magnesium Sulfate for Preeclampsia Policy         2008
- Membership/Education Chairperson SNE-AALNC                                                            2009
- Research and updating Abdominal Prep for Cesarean Delivery                                          2009
- President Elect CT Chapter AALNC                                                                            2009-2011
- Review of Safe Staffing Ratios for Hospital Data Base with Nurse Manager                        2009

- Review Unit Policies regarding Magnesium Sulfate, Induction, and Fetal Monitoring    2010
- Obstetric Hemorrhage Education Module    2011

## JOURNAL ARTICLES
- The Convenience of Daylight Obstetrics, *The Journal of Legal Nurse Consulting*    Winter 2009
- The Rise and Fall of VBAC, *The Journal of Legal Nurse Consulting*    Winter 2010

## AWARDS
- Targeted Nurse Investment Grant    February 2010
- Inducted into Chamberlain College of Nursing Honor Society    April 2010
- Advanced Nursing Education Grant    October 2010

## RECOGNITIONS
- Clinical Ladder Level 3    Current
- Trained Preceptor    1988-Current
- 20 Years Employee service to Danbury Hospital    May 2006